In the District Court of the United States
For The District of South Carolina
BEAUFORT DIVISION

| | | |
|---|---|---|
| **Alexander Mickle, #191932,** | ) | Civil Action No. 9:05-0867-PMD-GCK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF THE MAGISTRATE JUDGE** |
| **Ramzi Radhwn Ahmed,** | ) | |
| **Hafez Muharan, and** | ) | |
| **Ofc. Jason Gamba,** | ) | |
| | ) | |
| Defendants. | ) | |

## I. INTRODUCTION

The *pro se* Plaintiff, Alexander Mickle ("Plaintiff" or "Mickle") brought this action pursuant to Title 42, United States Code, Section 1983, alleging excessive use of force, assault and battery, and police brutality in connection with his arrest during the early morning hours of March 22, 2003. Pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d), D.S.C., the undersigned United States Magistrate Judge is authorized to review pretrial matters in prisoner cases filed under 42 U.S.C. § 1983, and submit findings and recommendations to the District Court.

## II. *PRO SE* COMPLAINT

Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978). Under established local procedure in this judicial district, a careful review has been made of the *pro se* Petition herein pursuant to the procedural provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214, codified at 28 U.S.C. § 2254. This review has been conducted in light of the following precedents: *Denton v.*

*Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes*, 449 U.S. 5 (1980). Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986). The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Social Services*, 901 F.2d 387 (4th Cir. 1990).

### III.  HISTORY OF THE CASE

The Plaintiff commenced this Section 1983 action on March 10, 2005[1] against the defendants Ramzi Radhwn Ahmed ("Ahmed"), Hafez Muharan ("Muharan"), and North Charleston Police Officer Jason Gamba ("Officer Gamba"), to recover damages for injuries he suffered during his arrest on March 22, 2003.[2] Officer Gamba was the arresting officer, and

---

[1]  Plaintiff has the benefit of the holding of *Houston v. Lack*, 487 U.S. 266 (1988) with respect to the "delivery" date of his Complaint.

[2]  Initially, Plaintiff also had listed "Vito K-9 Unit Ofc" as a defendant in his Complaint. Plaintiff affirmatively answered the Court's Special Interrogatory question "Is the 'Vito K-9 Ofc. named as a Defendant in this case a dog?" [4-1] Accordingly, on April 25, 2005, the Honorable Robert S. Carr, United States Magistrate Judge for the District of South Carolina, issued a

Ahmed and Muharan were present at the time of the arrest, having arrived at their residence and discovering it being burglarized by the Plaintiff during the early morning of March 22, 2003. Ahmed and Muharan prevented the Plaintiff from leaving the scene of the crime; Ahmed reached into Plaintiff's car and took his car keys, while Muharan used his cellphone to call the police.[3] Officer Gamba and his K-9, Vito, were dispatched to the residence at 2:21 a.m.[4] Officer Gamba attempted to detain Plaintiff, who pushed Officer Gamba and attempted to escape. According to Ahmed, the struggle continued between Plaintiff and Officer Gamba, and Officer Gamba released K-9 Vito. Both Officer Gamba and K-9 Vito ran after Plaintiff, and K-9 Vito bit Plaintiff on his hand. Ahmed provided a "victim statement" to North Charleston Police which stated in part, "The dog then bit the man on his leg and brought him to the ground. The officer then asked me to get his handcuffs from where he had dropped them by his car. I went to get the hand cuffs and handed them to the officer. The officer then placed man in the cuffs and then released the dog from the bite."[5]

Muharan also provided a "victim statement" to North Charleston Police which corroborated Ahmed's statement and stated that Plaintiff had a crowbar type of wrench behind his back in his hand at the time Officer Gamba was attempting to arrest and handcuff Plaintiff.[6]

---

Report and Recommendation for Partial Summary Dismissal of the canine defendant on the grounds that a dog is not a "person" for purposes of Section 1983, relying upon *Dye v. Wargo*, 253 F.3d 296 (7th Cir. 2001). [6-1]. By Order dated July 8, 2005, the Honorable Patrick Michael Duffy, United States District Judge for the District of South Carolina, issued an Order adopting Magistrate Judge Carr's Report and Recommendation. [12-1]

[3]   *See* Ahmed's Victim Statement, attached to [39-1].

[4]   *See* Narrative (dispatch sheet) of North Charleston Police Department, attached to [24-1].

[5]   *See* Ahmed's Victim Statement, attached to [39-1].

[6]   *See* Muharan's Victim Statement, attached to [39-1].

Plaintiff was bitten several times by K-9 Vito.  Plaintiff was treated by EMS at the scene, and taken to the emergency room for treatment, and released into the custody of a police officer at approximately 5:45 a.m. that morning.[7]

Plaintiff claims that during his arrest by Officer Gamba, Plaintiff was "assaulted, battered, beaten, maul[ed], mutilated, and attacked" by Officer Gamba, K-9 Vito, Ahmed, and Muharan. Plaintiff claims that the "unprovoked beating" by Officer Gamba, K-9 Vito, Ahmed, and Muharan on March 22, 2003 violated his "rights and constituted cruel and unusual punishment under the Eight [sic] Amendment."[8]  Furthermore, the "unreasoning and unnecessary use of force, bitting [sic], maul" of Plaintiff by Officer Gamba and K-9 Vito and the beating of Plaintiff by Officer Gamba and K-9 Vito "violated the due process clause of the Fourteen [sic] Amendment of the United States Constitution[.]"[9]  Plaintiff seeks a judgment declaring that the acts of Officer Gamba and K-9 Vito violated his rights under the Eighth and Fourteenth Amendments, as well as a judgment declaring that the acts of Ahmed and Muharan violated his rights under the Eighth Amendment.  Furthermore, Plaintiff seeks general damages in the amount of $100,000.00 from the Defendants as well as an unspecified amount of punitive damages and injunctive relief.[10]

Ahmed was served with Plaintiff's complaint on May 5, 2005 [8-1]; Muharan was served on June 6, 2005 [10-1], and Officer Gamba was served on June 27, 2005.  [11-1]  On July 15, 2005, Officer Gamba answered the Complaint and also filed a Motions pursuant to F.R.C.P. 12(b)(6) and 12(e).  [13-1; 14-1]  On July 19, 2005, an Order was issued pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of the dismissal procedure and the possible consequences if he failed to adequately respond to Officer Gamba's Motion.  [15-1]

---

[7]     *See* MUSC Patient Discharge Instructions attached to [24-1].

[8]     *See* Complaint [1-1] at p. 4.

[9]     *See* Complaint [1-1] at p. 4.

[10]    *See* Complaint [1-1] at p. 5.

Plaintiff filed a response in opposition to Officer Gamba's Motion. [18-1] Thereafter, Officer Gamba's employer (the State of South Carolina) retained counsel which filed Notice and Motion to Amend the Answer in order to assert additional affirmative defenses that had not been asserted in Officer Gamba's Answer. [21-1] This Motion was granted on November 14, 2005. [26-1] Meanwhile, Plaintiff moved for default as to the defendants Ahmed and Muharan [22-1] and the Clerk entered default as to Ahmed and Muharan on August 22, 2005. [25-1]

On November 30, 2005 Officer Gamba filed a Motion to Dismiss or in the Alternative Substitution of Parties [29-1] on the grounds that the City of North Charleston Police Department is a state agency as defined by the South Carolina Tort Claims Act and was not liable to Plaintiff because Officer Gamba did not act in a "grossly negligent manner" towards Plaintiff.[11] On December 5, 2005, another *Roseboro* Order was issued to the Plaintiff. [31-1] On January 3, 2006, Plaintiff filed a Response [32-1] which had attached to it a copy of Officer Gamba's Incident report, which described Plaintiff as resisting arrest, disregarding the warning that the K-9 would be used, running from the scene of the crime, being bitten by the K-9, striking the K-9's muzzle with his fists, and attempting to flee, dragging the K-9 behind him. According to the report, after Plaintiff was handcuffed, Officer Gamba ordered the K-9 to let go of the Plaintiff, the K-9 did so, and Officer Gamba called for back-up. Photographs were taken of Officer Gamba's police cruiser, which had been damaged from the struggle. Plaintiff was treated on the scene by EMS, and then transported to the hospital, and discharged to the Charleston County Detention Center.

On January 19, 2006, Officer Gamba filed a Motion for Summary Judgment and a supporting memorandum. [33-1] Another *Roseboro* Order was issued to Plaintiff, directing him

---

[11] It appears to the court that Plaintiff's action under the SCTCA would be timely under the applicable statute of limitations. Any action brought pursuant to the SCTCA "is forever barred unless an action is commenced within two years after the date of the loss was or should have been discovered[.]" S.C. Code Ann. § 15-78-110. In the case sub judice, Plaintiff filed his Complaint on March 11, 2005, not quite two years after his arrest on March 22, 2003.

to respond within thirty-four (34) days. [34-1] On February 3, 2006, Plaintiff filed a Motion to execute judgment pursuant to Rule 58, and seize property from the defendants Ahmed and Muharan.[12] [35-1]

After Plaintiff failed to respond to the *Roseboro* Order, the court issued an Order permitting Plaintiff an additional twenty (20) days in which to respond. [38-1] On March 23, 2006, Plaintiff filed a response and attached photocopies of photographs taken of his injuries inflicted by K-9 Vito. [39-1] In that pleading, Plaintiff argued he was wrongfully attacked and beaten by Officer Gamba, and "[e]xcessive force was being used three individuals was attacking plaintiff[.]"[13]

Officer Gamba has moved for dismissal of the action [29-1] and also for summary judgment. [33-1] Although Ahmed and Muharan were served, the Clerk of Court has entered default against them for failure to answer.

## IV.  JURISDICTION

This court construes Plaintiff's action as one filed under United States Code Sections 28 U.S.C. §§ 1331 and 1343 and under 42 U.S.C. § 1983.  Section 1331 allows districts courts to have original jurisdiction of civil actions which arise under the Constitution, laws or treaties of the United States.  Section 1343 specifically gives the district courts original jurisdiction of civil rights actions brought under Section 1983.  Section 1983, the primary basis for jurisdiction of the Plaintiff's lawsuit, provides in part:  "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

---

[12] The court will consider this as a Motion for Default pursuant to Rule 55(a), which provides: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default."

[13] *See* Plaintiff's Affidavit at p. 1, attached to Plaintiff's Response. [39-1]

thereof, to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  Accordingly, as required by statute, Plaintiff must meet two requirements to bring suit under Section 1983.  First, he must show that the defendants Ahmed and Muharan deprived Plaintiff of his rights "under color of" state law, and second, that the deprivation is of a right guaranteed by the Constitution or laws of the United States.  First, a review of Plaintiff's complaint shows that the most obvious deficiency is the lack of any "state action" in the alleged actions by the Defendants Ahmed and Muharan.  *See*, *e.g., Mitchell v. Chontos*, 756 F.Supp. 243, 247-248 (D.S.C. 1990).  Second, It appears to this court that any actions taken by Ahmed and Muharan did not deprive the Plaintiff of any constitutional right.

As Judge Wilkinson has explained:  "In the context of constitutional claims under 42 U.S.C. § 1983, which expressly applies to individuals acting 'under color of' state law, courts have recognized the need to limit the liability of private persons through application of the 'state action' doctrine."  *Holly v. Scott*, 434 F.3d 287, 292 (4th Cir. 2006), *quoting Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 (1982).  "Under this doctrine, we 'insist[]' as a prerequisite to liability 'that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State.'  *Holly*, 434 F.3d at 292, quoting *Lugar*, 452 U.S. at 937.  "By doing so, we maintain the Bill of Rights as a shield that protects private citizens from the excesses of government, rather than a sword that they may use to impose liability upon one another."  *Holly*, 434 F.3d at 292, citing *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 172 (1972).  The Fourth Circuit has recognized that there is 'no specific formula' for determining whether state action is present.  *Holly*, 434 F.3d at 292, *quoting Hicks v. S. Md. Health Sys. Agency*, 737 F.2d 399, 402 n. 3 (4th Cir. 1984) (internal quotation marks omitted).  "What is fairly attributable [to the state] is a matter of normative judgment, and the criteria lack rigid simplicity."  *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).  While a variety of factors may bear upon the

inquiry, none is individually dispositive; instead, they serve to inform an evaluation of the "totality of the circumstances." *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 343 (4th Cir. 2000); *see also Mentavlos v. Anderson*, 249 F.3d 301, 311-12 (4th Cir. 2001) (cataloging various approaches to determining state action).

In the present case, the alleged actions of Ahmed and Muharan cannot be said to be of a sufficiently 'state character' to create constitutional liability. Neither Ahmed nor Muharan were state officials, state employees, or connected to the state government in any way that would cause this court to consider them to be "state actors". Instead, Ahmed and Muharan only became involved in the events of the evening because the Plaintiff had burglarized their home and these Defendants had arrived just in time to find Plaintiff loading his car with their belongings. Nor can this court consider any actions taken by Ahmed or Muharan to be pursuant to authority from a state officer such as Officer Gamba. It may be that Ahmed and Muharan cooperated with Officer Gamba by retrieving his handcuffs where they had been dropped during the scuffle with Plaintiff, and by calling 911 on a personal cellphone because Officer Gamba's radio was not working. To consider such actions as cloaked by state action or somehow impute those actions to the state would render meaningless the definition of state action, as then every type of assistance rendered to a state law enforcement official by a private person, no matter how trivial, would cause that person to be considered a state actor and thus subject to liability under Section 1983. *Accord, UAW, Local No. 5285 v. Gaston Festivals, Inc.*, 43 F.3d 902 (4th Cir. 1995); *Chiles v. Crooks,* 708 F.Supp. 127, 130-131 (D.S.C. 1989) (Hamilton, J) (private security guard was not acting under color of state law when he reported arrestees' alleged criminal behavior to police).

In the present case, the court is convinced that Plaintiff cannot state a Section 1983 claim against Ahmed and Muharan under any facts as set forth in the complaint or as could be developed through discovery. Ahmed and Muharan did nothing more than follow the directives of Officer Gamba as he arrested Plaintiff. For Ahmed and Muharan, as victims of Plaintiff's burglary, to be

subject to liability under Section 1983 render the definition of "state actor" meaningless.  Thus, the court recommends, *sua sponte*, that Ahmed and Muharan be relieved from the Clerk of Court's entry of default against them, and that they be dismissed from this case as the court lacks jurisdiction over them.

Having so recommended, this court will turn its attention to Officer Gamba's motion for summary judgment as to Plaintiff's claims.

## V.  THE STANDARD FOR DETERMINING A MOTION FOR SUMMARY JUDGMENT

The Defendant's Motion for summary judgment is governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

It is important to add that unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion.  *Felty v. Graves-Humphreys Co.*, 818 F. 2d 1126 (4th Cir. 1987).  Similarly, genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions.  *Stone v. University of Md. Medical Sys. Corp.*, 855 F. 2d 167 (4th Cir. 1988).

In deciding whether to grant a motion for summary judgment, all justifiable inferences must be drawn in favor of the non-moving party.  *Miltier v. Beorn*, 896 F.2d 848, 852 (4th Cir. 1990); *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  In addition, "once a plaintiff 'has named a witness to support [his] claim, summary judgment should not be granted without . . . somehow showing that the named witness' possible testimony raises no genuine issue

of material fact.'" *Miltier*, 896 F.2d at 852, *quoting Celotex v. Catrett*, 477 U.S. 317, 328 (1986) (White J., concurring).

For purposes of evaluating the appropriateness of summary judgment, this court must construe the facts are set forth in the light most favorable to Plaintiff. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.") (internal quotation marks omitted); Fed.R.Civ.P. 56(c) (Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").

When, as in the present case, the Defendants are the moving party, and the Plaintiff has the ultimate burden of proof on an issue, the Defendants must identify the parts of the record that demonstrate the Plaintiff lacks sufficient evidence. The nonmoving party, then, must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

## VI.  DISCUSSION

### A.  Whether Officer Gamba used excessive force when arresting Plaintiff

Plaintiff claims that he suffered an "unprovoked beating" by Officer Gamba, and that unnecessary force was used against him when Officer Gamba released K-9 Vito in pursuit of Plaintiff.

As mentioned above, Plaintiff was treated by EMS at the scene of the arrest, and transported to the emergency room for further treatment, and released approximately three hours after the arrest.

The Fourth Amendment provides protection against force during arrest. *Graham v. Connor*, 490 U.S. 386 (1989). All claims of use of excessive force during investigatory stop or

arrest or other seizures are governed by the Fourth Amendment's "objective reasonableness" standard. *Id*. The test for excessive force in arrest context requires "balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governments interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985). The standard for measuring reasonableness of arrest is wholly objective. The objective reasonableness test requires careful attention to circumstances of particular case, including the severity of the crime, whether the suspect poses immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396, *Foote v. Dunagan*, 33 F.3d 445 (4th Cir.1994). The focus is on reasonableness at the moment, recognizing that officers are often faced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. *Graham*, 490 U.S. at 396.

In addition, the court may also consider the extent of plaintiff's injuries, or lack of them, in weighing his claim of excessive force. In a case from the prison milieu, the United States Supreme Court indicated that the amount of injury is irrelevant, if the inmate can show that it was inflicted with a malicious intent to harm. *Hudson v. McMillian*, 503 U.S. 1 (1992). A plaintiff may not recover, however, for only de minimis injuries. *Id.* Although that standard is used in consideration of Eighth Amendment claims of cruel and unusual punishment, the same thought must be applied in cases questioning the "objective reasonableness" of force used to effect an arrest. Thus, a review of cases determining cruel and unusual punishment under the Eighth Amendment is instructive. "An excessive force claim generally should not lie where any injury sustained by the plaintiff is *de minimis*." *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994), *cert. denied*, 513 U.S. 1114 (1995). In *Norman*, the plaintiff alleged that an officer hit his hand with brass keys causing great pain and swelling as well as loss of partial use of his right hand and residual pain for three years. The court found plaintiff's injury to be *de minimis*, noting that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment

excessive force claim if his injury is *de minimis*." Likewise, while "[t]he due process clause protects a pre-trial detainee from 'the use of excessive force that amounts to punishment,'" (*United States v. Cobb*, 905 F.2d 784-788 (4th Cir. 1990) (*citations omitted*), absent the most extraordinary circumstances, excessive force claims do not lie where the injury *is de minimis*.

Clearly, in light of the *de minimis* nature of any alleged injury, Plaintiff's excessive force claim is patently without merit. Since Plaintiff sustained no serious or significant injury, his claim is not cognizable under 42 U.S.C. § 1983. As *Graham v. Connor*, 490 U.S. 386 (1989), explains, "not every push or shove by a state actor can rise to the level of a violation of constitutional rights." The Fourth Circuit has observed:

> Punishment must mean something more than trifling injury or negligible force. Otherwise, every touch would be actionable and every alleged 'push or shove' would entitle plaintiff to a trial. This is no idle concern. Those in detention often detest those charged with supervising their confinement, and seek to even the score through the medium of a lawsuit. The Constitution, however, does not exist to scoop up every last speck of detainee discontent. To hold that every incident involving contact between an officer and a detainee creates a constitutional action, even in the absence of injury, trivializes the nation's fundamental document.

Plaintiff bases his allegation of a constitutional violation on the fact that he suffered dog bites as a result of his disregard of Officer Gamba's warning that he would release the K-9 unit, Vito. In the present case, the force used by Officer Gamba when attempting to arrest Plaintiff appears appropriate from the evidence in the record, and the resulting "injuries" to Plaintiff (the dog bites from K-9 Vito) are *de minimis*. The medical records state that Plaintiff was discharged from the ER with directions to keep the wounds clean. There is no evidence in the record before this court that Plaintiff suffered any complications from the dog bites, or that he needed further medical attention. Injuries which are *de minimis* generally do not support a claim for a constitutional violation. *Riley v. Dorton*, 115 F.3d 1159, 1166 (4th Cir. 1997) (en banc) (holding that a plaintiff cannot prevail on a Section 1983 excessive force claim if his injury is de minimis ); *see, e.g.*, *Taylor v. McDuffie*, 155 F.3d 479 (4th Cir. 1998) (even if there were a genuine issue of material fact as to whether officers behaved maliciously or sadistically after need for force had

subsided, pretrial detainee failed to show that injuries allegedly resulting from "jabbing" of a kubaton into detainee's nose and mouth were more than *de minimis*; no medical treatment was required or prescribed for any such injuries and medical records did not support the injuries that the detainee purported to have received); *see also Oliver v. Keller*, 289 F.3d 623 (9th Cir. 2002) (where pretrial detainee did not suffer more than *de minimis* physical injury during his confinement, the PLRA barred his Section 1983 claim for mental or emotional injury); *Gavin v. Ammons*, 21 F.3d 430, 1994 WL 117983 (7th Cir. April 6, 1994) [Table] (guard's pulling of inmate's hair was *de minimis* force); *Calabria v. Dubois*, 23 F.3d 394, 1994 WL 209938 (1st Cir. May 24, 1994) [Table] (radio belt thrown at face of inmate causing blood to appear was *de minimis* force); *White v. Holmes*, 21 F.3d 277, 280-81 (8th Cir. 1994) (keys swung at inmate which slashed his ear was *de minimis* force); *Jackson v. Pitcher*, 966 F.2d 1452, 1992 WL 133041 (6th Cir. June 16, 1992) [Table] (guard's stomp on the hand of inmate was *de minimis* force), *cert. denied*, 506 U.S. 1024 (1992); *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir. 1985) (corrections officer's pushing a cubicle wall so as to strike plaintiff's legs, a brusque order to an inmate and poking the inmate in the back was *de minimis* force); *see also Roberts v. Samardvich*, 909 F.Supp. 594 (N.D.Ind. 1995) (grabbing inmate, pushing him up the stairs toward his cell, and placing him in cell cuffed, shackled, and secured to the door was *de minimis* force under the circumstances); *McMiller v. Wolf*, 1995 WL 529620 (W.D.N.Y. August 28, 1995) (snatching inmate's mirror, breaking it against cell bars and thereby lacerating inmate's finger was *de minimis* force); *Crow v. Leach*, 1995 WL 456357 (N.D.Cal. July 28, 1995) (corrections officer's pushing inmate into chair causing his shoulder to break window behind him was *de minimis* force); *Jackson v. Hurley*, 1993 WL 515688 (N.D.Cal. November 23, 1993) (blow to back of neck with forearm and kick to the ankle of inmate were *de minimis* force); *DeArmas v. Jaycox*, 1993 WL 37501 (S.D.N.Y. February 8, 1993), *aff'd*,14 F.3d 591 (2d Cir. 1993) (corrections officer's punching inmate in arm and kicking inmate in leg was *de minimis* force); *Olson v. Coleman*, 804

F.Supp. 148, 150 (D.Kan. 1992) (single blow to head of handcuffed inmate was *de minimis* force); *Candelaria v. Couglin*, 787 F.Supp. 368, 374-75 (S.D.N.Y. 1992) (fist pushed against neck of inmate causing him to lose his breath was *de minimis* force), *aff'd*, 979 F.2d 845 (2d Cir. 1992); *Neal v. Miller*, 778 F.Supp. 378, 384 (W.D.Mich. 1991) (backhand blow with fist to the groin of inmate was *de minimis* force); *Ramos v. Hicks*, 1988 WL 80176 (S.D.N.Y. July 25, 1988) ("bent wrist come-along hold" or single punch not unreasonable or excessive where inmate ignored repeated order, became agitated, and attempted to damage state property); *Anderson v. Sullivan*, 702 F.Supp. 424, 426 (S.D.N.Y. 1988) (corrections officer's pulling inmate's arms behind back, lifting them up and forcing inmate's face into cell bars was *de minimis* force).

Applying these cases to the facts at hand, it is clear that Plaintiff's injuries were *de minimis*, and thus Officer Gamba did not violate any of Plaintiff's constitutional rights and is entitled to summary judgment as to Plaintiff's excessive force claims.

### B.  Officer Gamba is Entitled to Immunity in his Official Capacity Pursuant to the Eleventh Amendment

When a defendant is sued in his official capacity, as in the case sub judice, the suit is frequently intended as one against the state, the real party in interest.  If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution.  Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.  In the case of *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between Section 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties.  The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. *Will*, 491 U.S. at 70.  In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. *Will*, 491 U.S. at 70.  As this is a lawsuit against a state official, it is recommended that he is entitled to Eleventh Amendment immunity from monetary damages. Accordingly, it is recommended that summary judgment be granted pursuant to Rule 56 in favor of Defendant Gamba on these grounds.

## RECOMMENDATION

For the aforementioned reasons, **it is recommended that the Defendants Ahmed and Muharan be relieved of the entry of default against them [25-1]** and that this case be dismissed as against the Defendants Ahmed and Muharan.  It also is recommended that **Plaintiff's Motion to Execute Judgment [35-1] be denied.**

It further is recommended that **Officer Gamba's Motion to Dismiss [29-1] is deemed moot** and **Officer Gamba's Motion for Summary Judgment [33-1] be granted.**

S/George C. Kosko
United States Magistrate Judge

April 21, 2006

Charleston, South Carolina

### Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation" & The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of its service.  28 U.S.C. § 636 and Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail.  Fed. R. Civ. P. 6.  Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed.  Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3, (S.D.N.Y. 1992).  A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge.  *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections.  **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.**  *See* Keeler v. Pea, 782 F. Supp. 42, 43-44 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, (D.Utah 1995).  Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge.  *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.) 1984, *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985).  Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object.  In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues.  Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991).  *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir. 1985)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985).  In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object.  The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate**

> **judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

*See also* Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

**This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**
