IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| Alexander Mickle, #191932 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 9:05-0867-PMD |
| vs. | ) | |
| | ) | |
| Ramzi Radhwn Ahmed, | ) | **OPINION AND ORDER** |
| Hafez Muharan, | ) | |
| and Jason Gamba, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court upon *pro se* Plaintiff Alexander Mickle's ("Mickle" or "Plaintiff") objections to the United States Magistrate Judge's Report and Recommendations ("R & R") of April 21, 2006, regarding Plaintiff's action pursuant to 42 U.S.C. § 1983. The Magistrate Judge recommends that the Court (1) relieve Defendants Ahmed and Muharan of default judgments entered against them, (2) dismiss Plaintiff's case against Defendants Ahmed and Muharan, (3) deny Plaintiff's motion to execute default judgments, (4) deem moot Defendant Gamba's motion to dismiss, and (5) grant Defendant Gamba's motion for summary judgment. (R & R at 15.) The record contains the R & R which was made in accord with 28 U.S.C. § 636 (b)(1)(B).

A party may object in writing to the R & R within ten days after being served with a copy of the report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Plaintiff filed timely written objections to the R & R on May 4, 2006.

# I. BACKGROUND

The facts, either undisputed or taken in a light most favorable to Plaintiff as the nonmoving party, are as follows:

Mickle is an inmate in the custody of the South Carolina Department of Corrections. On March 10, 2005, Mickle filed a § 1983 complaint alleging Defendants violated his Constitutional rights by using excessive force to secure his arrest on March 22, 2003. Plaintiff also claims Defendants committed acts of police brutality, assault, and battery against him during the arrest. Plaintiff seeks general damages of $100,000, unspecified punitive damages, and unspecified injunctive relief.

On March 22, 2003, at 2:21 A.M., Defendant Ramzi Radhwn Ahmed ("Ahmed") called 911 to report a disturbance in process at the residence he shares with Defendant Hafez Muharan ("Muharan"). (NCPD Inc. Rpt., Mar. 22, 2003.) Defendant Jason Gamba, acting in his capacity as a North Charleston police officer, responded to the call. (Inc. Rpt.)

Ahmed and Muharan independently made statements at the scene reporting they were returning home when they noticed a man moving items inside a car parked near their apartment. (NCPD Victim States., Mar. 22, 2003.) They also noticed the door to their apartment was open. As they passed the parked car, they realized Plaintiff was loading their possessions into his car. When they confronted Plaintiff, he attempted to drive away. Ahmed stopped him by reaching inside the car and grabbing the keys, while Muharan called the police. Plaintiff carried the items back into Defendants' apartment, but they refused to return his keys until the police had arrived. Officer Gamba reached the scene and told Plaintiff to go with him to the patrol car for questioning. (Vic. States.)

Because Mickle appeared nervous and was repeatedly moving his hands toward his pockets as they walked to the officer's car, Gamba conducted a protective pat down for weapons. (Inc. Rpt.) The written statements of Gamba, Mickle, Ahmed, and Muharan diverge at this

2

point.[1]  Each account agrees (1) a struggle broke out between Officer Gamba and Plaintiff; (2) Plaintiff pulled a tire iron from his pocket; and (3) Ahmed and Muharan rushed over to help Gamba restrain Plaintiff.  (Inc. Rpt.)

Gamba states he warned Plaintiff several times he "would deploy the K-9" if he continued to resist arrest.  After telling Ahmed and Muharan to move away, Gamba released the K-9.  The police dog engaged Mickle, who began striking the dog.  After handcuffing Plaintiff, Gamba ordered the  K-9 to disengage and he called for backup on Muharan's cell phone.  (Inc. Rpt.)

EMS personnel treated Mickle for dog bites at the scene and police transported him to Charleston County Memorial Hospital; at 5:45 A.M., the hospital cleared him for jail and discharged him to the police.  (MUSC  Pat. Dischg. Instrs., Mar. 22, 2003.)

## II.  PROCEDURAL HISTORY

On March 10, 2005, Mickle brought a § 1983 action in federal court against Defendants Gamba, Vito K-9,[2] Muharan, and Ahmed, alleging Defendants had violated his constitutional rights under the Eighth and Fourteenth Amendments by using excessive force during his arrest on March 22, 2003.  The district court referred the case to the Magistrate Judge for a Report and Recommendations pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff served each Defendant with his complaint.[3]  On July 15, 2005, Gamba answered Plaintiff's complaint and filed motions (1) to dismiss pursuant to Rule 12 (b)(6), and (2) to make

---

[1]Gamba states Mickle "pulled a tire iron form the waistband of his pants and raised it." (Inc. Rpt.)  Mickle alleges he told Gamba he had a tire iron in his rear pocket and was attacked by Gamba as he "rendered the tire arm."  (Pl.'s  Compl. ¶ 3.)  Ahmed reports Plaintiff pushed the officer;  Muharan reports Plaintiff was holding "a crowbar type of wrench behind his back" as Gamba attempted to handcuff him.  (Vic. States.)

[2]Vito K-9 is not a "person" and, therefore, is not an appropriate Defendant to a § 1983 claim; the K-9 was dismissed from suit on July 8, 2005.

[3]Plaintiff served Ahmed on May 5, 2005; Muharan on June 6, 2005; and Gamba on June 27, 2005.

3

more definite pursuant to Rule 12(e).[4]  On November 15, 2005, Gamba re-filed the amended answer to Plaintiff's complaint, first filed on August 15, 2005.[5]

On January 19, 2006, Gamba filed a motion for summary judgment with supporting memorandum pursuant to Rule 56(c).[6]  On March 23, 2006, Plaintiff filed a response in opposition to Gamba's motion for summary judgment and submitted photocopies of the wounds the K-9 allegedly inflicted on him during his arrest.

Defendants Ahmed and Muharan did not respond to Plaintiff's complaint.  On August 18, 2005, Plaintiff moved for default judgments against each Defendant; these judgments were entered by the Clerk on August 22, 2005.  On February 3, 2006, Plaintiff filed a motion to execute the default judgments.

### III.  STANDARD OF REVIEW

#### A.        Report and Recommendations

The Magistrate Judge considers the evidence before him and files an R & R with the district court.  The recommendations of the Magistrate Judge have no presumptive weight and the responsibility for making a final determination remains with the district court.  *Mathews v. Weber*, 423 U.S. 261, 271 (1976).  The district court determines *de novo* those portions of the R & R to which Plaintiff specifically objects and may accept, reject, or modify, in whole or in part,

---

[4]On August 8, 2005, Mickle filed a response in opposition to Gamba's motions.  On August 15, 2005, Gamba filed a motion to amend his answer; the motion was granted on November 14, 2005.

[5]On November 30, 2005, Gamba filed a motion to dismiss, or in the alternative, a substitution of parties.  On January 3, 2006, Plaintiff responded in opposition to Gamba's motion.

[6]As Mickle is proceeding *pro se*, the court entered a *Roseboro* order on January 23, 2006, advising him to file an adequate response within thirty-four days (34) days.  Plaintiff did not respond to the *Roseboro* order, and on March 2, 2006, the Court granted Plaintiff an additional twenty (20) days to respond.

the findings and recommendation(s), or may recommit the matter to the Magistrate Judge with instructions.   28 U.S.C. § 636(b)(1)(B).   Having reviewed the evidence in the record and Plaintiff's objections to the R & R, the district court modifies the R & R analysis and recommends the relief set forth below.

### B.     Summary Judgment

"Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'   By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (quoting Fed. R. Civ. P. 56(c)).

"[T]he substantive law will identify which facts are material.   Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.   Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.   "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict.   Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."   *Id.* at 256.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.   In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the

5

nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986).

"Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id.* at 327.

## IV.  DISCUSSION

### A.      § 1983 Civil Rights Claims: Fourth Amendment Excessive Force

Plaintiff brings his claims in federal court under 42 U.S.C. § 1983, which permits lawsuits for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." To state an action under § 1983, plaintiff's claim "must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins,* 487 U.S. 42, 48 (1988); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994)). "The first inquiry in any § 1983 suit is to isolate the precise constitutional violation with which [the defendant] is charged." *Graham v. Connor,* 490 U.S. 386, 394 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 140 (1979)).

In this case, Plaintiff alleges his constitutional rights were violated by Defendants' use of excessive force during his arrest. In the Supreme Court's touchstone case that defined the constitutional standard governing a free citizen's claim that law enforcement officials used excessive force in the course of making an  arrest, investigatory stop, or other "seizure" of his person, the Court held: "[A]*ll* claims that law enforcement officers have used excessive force -

deadly or not - in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.   Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."  *Graham,* 490 U.S. at 395.

The Court holds the allegations of a *pro se* plaintiff to less stringent standards than it does formal pleadings drafted by lawyers.  *Haines v. Kerner,* 404 U.S. 519, 520 (1972).  Thus, while Plaintiff Mickle styles his claims under the Eighth and Fourteenth Amendments, the Court liberally construes his § 1983 claim under the Fourth Amendment.

### B.        Plaintiff's Objections to the R & R

As understood by the Court, Mickle objects (1) to the entire R & R.  More specifically, Mickle objects (2) to the recommendation to dismiss his case against Defendants Ahmed and Muharan, (3) to the recommendation to set aside default judgments entered against Ahmed and Muharan, (4) to the recommendation to grant summary judgment to Defendant Gamba and to dismiss Gamba's  motion to dismiss as moot, and (5) to the finding that Defendants are immune from suit against them.

### 1.        Mickle "makes total objection" to the R & R.

Mickle states he objects to the entire R & R.  (Pl.'s Objs. at 1-2.)  To the extent Mickle is attempting to make a general challenge, a district court need not make a *de novo* review "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).   However, the district court is required to determine *de novo* each of the Plaintiff's specific objections to the Magistrate Judge's factual findings and proposed recommendations.  *Id.*  The fact that Plaintiff is acting *pro se* encourages the district court to read his objections broadly.  *Id.* at 48.

**2.     Mickle objects to the recommendation to dismiss his case against Defendants Ahmed and Muharan.**

Under § 1983, Plaintiff's only cognizable claim is that excessive force was used against him during his arrest. Plaintiff alleges that Defendants Ahmed and Muharan are proper § 1983 defendants because they assisted Officer Gamba in restraining him, retrieved Gamba's handcuffs, and allowed him to use their cell phone to call for backup. (Pl.'s Objs. at 1-3.)

The Court agrees with the Magistrate Judge's finding that "the most obvious deficiency [in Plaintiff's complaint] is the lack of any 'state action' in the alleged actions by Defendants Ahmed and Muharan." (R & R at 7.) At the outset, a § 1983 claim must name as proper defendants persons who were acting "under color of law" at the time of the alleged constitutional violation. The Court agrees with the Magistrate Judge's finding that Defendants Ahmed and Muharan were acting as private citizens at the time of Plaintiff's arrest and are improper defendants to a § 1983 action. While Plaintiff accurately states he served each Defendant, service merely gives notice that an action has been commenced; service does not confer jurisdiction upon a court.[7] *See* F. R. Civ. P. 4(c).

Because a § 1983 claim does not lie against private citizens, Plaintiff's § 1983 claims against Defendants Ahmed and Muharan are without merit; and, therefore, the Court accepts the Magistrate Judge's recommendation to dismiss Plaintiff's federal claims against Ahmed and Muharan.

**3.     Mickle objects to the recommendation to set aside default judgments entered against Defendants Ahmed and Muharan.**

Plaintiff correctly states that Defendants Ahmed and Muharan did not answer his complaint and contends the Court appropriately entered default judgments against them. (Pl.'s Objs. at 1-3.) However, because the Court has no jurisdiction over these Defendants, it cannot

_____

[7]To the extent Plaintiff asserts State law claims against Defendants Ahmed and Muharan, the State of South Carolina, and not this Court, has exclusive jurisdiction over these Defendants.

enter judgment against them; therefore, the default judgments are void and must be set aside. *See* F. R. Civ. P. 55(c), 60(b)(4).  Because the Court must set aside Plaintiff's default judgments, the Court must also dismiss, as moot, Mickle's motions to execute the judgments.

4.     **Mickle objects to the recommendation to grant summary judgment to Defendant Gamba and to dismiss Gamba's motion to dismiss as moot.**

The Court generously construes Plaintiff's objection to include an objection to the grant of summary judgment in Defendant Gamba's favor.  Plaintiff "prays the Court[] view [his claim of excessive force] in light of medical records and photos which was [sic] presented in [P]laintiff motions. . . . Plaintiff was not a convicted prisoner during these events. Plaintiff objects to Magistrate reviews [sic] to show motive as 'if' plaintiff was a prisoner."  (Pl.'s Objs. at 5.)

Relying on cases that consider the extent of a prisoner's injuries, under an Eighth Amendment analysis of cruel and unusual punishment (R & R at 11-14), the Magistrate Judge concluded: "[I]n light of the de minimis nature of any alleged injury, Plaintiff's excessive force claim is patently without merit.  Since Plaintiff sustained no serious or significant injury, his claim is not cognizable under 42 U.S.C. § 1983."  (R & R at 12.)

The Supreme Court noted in *Graham*: "[B]ecause [Plaintiff] was not an incarcerated prisoner [at the time of the alleged constitutional violation], 'his complaint of excessive force did not, therefore, arise under the [E]ighth [A]mendment.'"  490 U.S. at 392, n. 3; *see also Ingraham v. Wright*, 430 U.S. 651, 671, n. 4 (1977) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. . . . [T]he State does not acquire the power to punish[,] with which the Eighth Amendment is concerned[,] until after it has secured a formal adjudication of guilt in accordance with due process of law."); *Hudson v. McMillian,* 503 U.S. 1, 7 (1992) ("The core inquiry for an inmate's Eighth Amendment excessive force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'").  Accordingly, an Eighth Amendment analysis is not relevant to Plaintiff's claims against

Defendant Gamba.  The Court finds that the Magistrate Judge erred in analyzing Plaintiff's claims of excessive force under the Eighth Amendment.

Because the Magistrate Judge applied the improper test to a claim of excessive force during arrest, the Court now considers Mickle's § 1983 claim against Gamba solely under a Fourth Amendment analysis of the facts confronting the officer at the time of arrest as required by the Supreme Court in *Graham*.  The Fourth Amendment test for excessive force during arrest is "an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Graham*, 490 U.S. at 397.  Factors include: (1) severity of the crime committed by the suspect, (2) whether the suspect presents an immediate threat to the safety of the police officer or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight.  *Id.* at 396.  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Id.*  Furthermore, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation."  *Id.* at 396-97.  "[T]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. . . . [I]ts proper application requires careful attention to the facts and circumstances of each particular case . . . ."  *Id.* at 396 (internal citations omitted).[8]

---

[8]Most Supreme Court cases involving § 1983 claims of excessive force during arrest consider whether the police officer's use of *deadly* force was excessive.  Those cases address whether the officer's use of *deadly* force constituted a constitutional violation against a fleeing suspect which resulted in the suspect's death, or instead, if the *suspect's act* of fleeing arrest caused his own death.  In analyzing whether excessive force was used during arrest, the court applies an "objective reasonableness" standard: The use of *deadly* force to prevent escape is constitutionally reasonable only where "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others. . . . Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failure to apprehend him does not justify the use of deadly force to do so. . . . A police officer may not

In determining if the force applied to an arrestee was objectively reasonable, "[t]he task of [the] court is to put itself into the shoes of the officers at the time the actions took place and to ask whether the actions taken by the officers were objectively unreasonable." *Altman v. City of High Point, N.C.,* 330 F.3d 194, 205 (4th Cir. 2003). In *Altman,* the court held: "[T]he officers committed no unreasonable seizure in violation of the Fourth Amendment. It is important to note that we are not saying the officers' responses in these cases were the best possible responses. . . . [U]nder the circumstances existing at the time the officers took the actions and in light of the facts known by the officers, their actions were objectively reasonable." *Id.* at 207.

For Plaintiff's claim to survive summary judgment, the Court must find a genuine factual dispute exists regarding whether Gamba's deployment of the K-9 deprived Plaintiff of his Fourth Amendment right to be free from excessive force during arrest. Accordingly, the Court must determine whether Gamba's decision to deploy the K-9 was "objectively reasonable" under the circumstances he encountered during Mickle's arrest.[9]

In determining if the force used to affect a particular seizure is reasonable under the Fourth Amendment, the Supreme Court recognizes the need to "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Robinette v. Barnes*, 854 F.2d 909, 913 (6th Cir. 1988) (quoting *U.S. v. Place,* 462 U.S. 696, 703 (1983)). In *Robinette,* an officer had deployed his K-9 to assist with an arrest and the police dog had inadvertently killed the suspect. In determining whether the officer had used excessive force, the court applied a balancing test and found: (1) the K-9 had not killed a suspect before, (2) there was no evidence the officer

---

seize an unarmed, non-dangerous suspect by shooting him dead . . . ." *Tenn. v. Garner*, 471 U.S. 1, 11-12 (1985).

[9]An officer's use of a K-9 to assist in the arrest of a criminal suspect is generally not considered to be a constitutional violation, even when the K-9's assistance results in the inadvertent death of the suspect. *See generally* William G. Phelps, *Liability, under 42 U.S.C.A. § 1983, for Injury Inflicted by Dogs under Control or Direction of Police*, 102 A.L.R. Fed. 616 (2006).

intended the suspect to die or suffer serious bodily harm, (3) the officer had not deviated from proper search procedures, (4) the officer had probable cause to believe the suspect posed a risk to his safety and the safety of others, and (5) the officer had warned the suspect the dog would be used if he continued to resist arrest. *Id.* at 912-915. The court held the officer's use of the K-9 did not violate the suspect's Fourth Amendment constitutional right to be free from excessive force during seizure: "[E]ven if we were to conclude that the use of a police dog to apprehend a suspected felon constitutes deadly force, the use of such force . . . was not unreasonable under the circumstances." *Id.* at 913. The *Robinette* court noted that the use of police dogs can (1) prevent officers from having to resort to deadly force and (2) protect the officers from being subjected to deadly force used against them by suspects attempting to avoid arrest. *Id.* at 914.[10]

Under the facts of this case, presented in the light most favorable to Mickle as the nonmoving party, Officer Gamba's use of the K-9 did not constitute excessive force. Gamba was conducting a protective pat down of Mickle, a burglary suspect, when a fight broke out between them. Under the Fourth Amendment standard of "objective reasonableness," a reasonable officer could conclude Mickle was attempting to avoid arrest. It is undisputed that Mickle was carrying a tire iron at the time of the pat down. A reasonable officer confronted by a suspect with a tire iron in his hand could conclude the suspect posed an immediate threat to his safety and the safety of others in the area. In light of the quickly developing and potentially dangerous circumstances, the Court finds Gamba's decision to use his K-9 to assist in Mickle's arrest was "objectively reasonable" under the circumstances.

---

[10]The only case the Court located that found the use of a K-9 during arrest to be excessive force that rose to the level of a constitutional violation was analyzed under the Fourteenth Amendment, prior to the Supreme Court's holding in *Graham* which required a Fourth Amendment analysis of all excessive force claims related to incidents that occur prior to completion of an arrest. *See Luce v. Hayden*, 598 F. Supp. 1101 (D. ME. 1984) (After an officer had gained full control over a restrained suspect, the officer intentionally and maliciously ordered his police dog to attack the suspect. The *Luce* Court applied the Fourteenth Amendment due process test that protects a detainee from for excessive punishment and found that the officer's conduct "shocked the conscience.").

Mickle implies that because he "backpeddle[d] while K-9 Vito attacked," the K-9's attack was excessive.  (Pl.'s Obj's at 3.)  However, it is not objectively reasonable for a K-9 to distinguish between a fleeing suspect and a "backpeddling" suspect.  Because Mickle was forcibly resisting arrest, it was objectively reasonable for Gamba to allow the K-9 to hold the suspect until he was securely handcuffed.  In a recent Fourth Circuit case analyzing an arrestee's excessive force claim under the Fourth Amendment, the court found it significant that plaintiff admitted "the allegedly excessive force ceased after the officers handcuffed him. . . .This fact supports the finding that the force used by the officers was that force which was necessary to effect the arrest of an aggressive individual in a rapidly changing environment."  *Wilson v. Flynn,* 429 F.3d 465, 469 (4th Cir. 2005).

The Court agrees with the *Robinette* Court that police dogs can prevent the necessity of resort to the use of deadly force to apprehend a suspect who resists arrest.  The  facts indicate Mickle was resisting arrest when Gamba deployed the K-9.  Applying the *Graham* test of objective reasonableness, the Court holds that Defendant Gamba's decision to deploy the K-9 was objectively reasonable and did not violate Plaintiff's Fourth Amendment rights.  Accordingly, Gamba is entitled to summary judgment regarding Plaintiff's § 1983 claim against him.  Summary judgment in Gamba's favor moots all pending motions related to Plaintiff's claims against him.

**5.     Mickle objects to the finding that Defendant Gamba is immune from suit.**

The Magistrate Judge found that Defendant Gamba, in his official capacity, is entitled to Eleventh Amendment immunity from suit.  (R & R at 14-15.)  Plaintiff's immunity objections appear related to that finding.  (Pl.'s Objs. at 3.)

Eleventh Amendment Sovereign Immunity is a an affirmative defense that may be raised as a matter of law only by the State and arms-of-the-State.  The Supreme Court recently held: "A consequence of the Court's recognition of preratification sovereignty as the source of immunity from suit is that only States and arms of the State possess immunity from suits authorized by

13

federal law." *Northern Ins. Co. of N.Y. v. Chatham County, Ga.,* 126 S. Ct. 1689, 1693 (2006). The Supreme Court reaffirmed the rule that "municipalities, unlike States, do not enjoy a constitutionally protected immunity from suit." *Id.* (quoting *Jinks v. Richland County*, 538 U.S. 456, 466 (2003)).

A municipal police officer does not qualify for Eleventh Amendment immunity. *See Nelson v. Strawn*, 897 F. Supp. 252 (D.S.C. 1995) (holding that the Moncks Corner Police Department, and its officers acting in their official capacities, are not shielded from suit by the Eleventh Amendment) (vacated on other grounds); *Thomas v. St. Louis Bd. of Police Commrs.*, 447 F.3d 1082 (8th Cir. 2006) (holding that the Eleventh Amendment does not shield the St. Louis Police Department, or its officers, from an arrestee's § 1983 claim, because a municipal police department is not an arm-of-the-State); *see also Northern,* 126 S. Ct. at 1689 (reversing the Eleventh Circuit and holding "residual immunity" does not immunize entities from suit in federal court). Accordingly, the Court finds the Magistrate Judge erred in finding Gamba immune under the Eleventh Amendment from Plaintiff's § 1983 claims. However, such error is harmless because, as the Court has already found, Defendant Gamba did not violate Plaintiff's constitutional rights.

Plaintiff also objects to "the defense of qualified immunity." (Pl.'s Objs. at 4.) However, before a court considers whether qualified immunity shields an officer from suit in his individual capacity, the Court must find a Constitutional violation has occurred. "Determining whether [] public officers are entitled to qualified immunity involves a two-step analysis. A court must first decide 'whether a constitutional right would have been violated on the facts alleged.' . . . If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Wilson*, 429 F.3d at 467 (quoting *Saucier v. Katz,* 533 U.S. 194, 200-201 (2001)); *see also Saucier,* 533 U.S. at 200) ("A court required to rule upon the qualified immunity issue must consider [the] threshold question:

14

Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  This must be the initial inquiry.").

In this case, because the Court finds Defendant Gamba committed no constitutional violation, the Court need not reach the issue of qualified immunity.

## V.  CONCLUSION

The Court, having considered  the pleadings, the R & R, Plaintiff's objections to the R & R, and the entire record, **ORDERS**, for the foregoing reasons, that Defendant Gamba's Motion for Summary Judgment is **GRANTED**, and Defendant Gamba's Motion to Dismiss is **DISMISSED** as moot.  Default Judgments entered against Defendants Ahmed and Muharan are hereby **VACATED** and **SET ASIDE,** and Plaintiff's Motions to Execute Default Judgments against Defendants Ahmed and Muharan are **DISMISSED.**   All of Plaintiff's federal claims against Defendants Ahmed and Muharan are hereby **DISMISSED with prejudice.**   To the extent that Plaintiff has asserted State law claims, the court declines to exercise jurisdiction over those claims and they are **DISMISSED**.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**July 10, 2006.**

## NOTICE OF RIGHT TO APPEAL

Petitioner is hereby notified that he has the right to appeal this order within thirty (30) days from the date hereof, pursuant to Rules 3 and 4, Federal Rules of Appellate Procedure.